**Zoe Ann GILLILAND, Appellant,**

v.

**James H. GILLILAND, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 7, 1999.

Filed March 30, 2000.

Reargument Denied June 1, 2000.

Jeffrey Lundy, Punxsutawney, for appellant.

Jamea A. Naddeo, Clearfield, for appellee.

Before POPOVICH, JOYCE and TAMILIA, JJ.

POPOVICH, J.:

¶ 1 This is an appeal from the order of equitable distribution entered on May 19, 1999, in the Court of Common Pleas of Clearfield County, following the denial of appellant's exceptions to the Master's Report. The lower court adopted the Master's Report in relation to the equitable distribution of the parties' estate. In addition, the trial court ordered appellant to pay alimony in the manner set forth in the Master's Report and dismissed appellant's claim for counsel fees. Upon review, we affirm the order of the trial court. Herein, appellant asks the following:

1.  Did the [l]ower court misapply the law in determining that marital property interests involving an alleged gift of realty between husband and wife are controlled by the Statute of Frauds criteria, being "direct, positive, express, unambiguous" evidence ... as opposed to the equity principles of the Divorce Code ... ?

2. Is the fact that both Husband and Wife, ten years prior to separation, agreed that they believed the Husband, and he so informed Wife, that he had placed Wife's name on the property, and so conducted themselves thereafter, sufficient to meet the burden of a gift of realty so as to deem such property marital?

3. Did the [lower court] abuse its discretion in ordering alimony by relying principally on an alleged reduction in earning capacity, a result of an injury which was caused by the Husband himself, which occurred more than two years after the date of separation, while [the lower court] disregarding [sic] the substantial non-marital assets and personal property held by Husband?

Appellant's brief, at vi.

¶ 2 The parties were married on April 13, 1984, and separated on or about June 19, 1995. On September 19, 1995, the wife ("appellant") filed a complaint in divorce and a Master was appointed on December 21, 1996. The matter was bifurcated and a divorce decree was entered on April 17, 1997, with a reservation of all rights. A Master's hearing was held on December 22, 1997, and the Master's Report was filed on January 13, 1999. Appellant filed timely exceptions to the Master's Report which were subsequently denied on May 19, 1999. This timely appeal followed.

¶ 3 In approximately 1971 or 1972, the husband ("appellee") and his brother, John Gilliland, purchased approximately 180 acres of property in Pike Township, Pennsylvania. Appellee and Mr. Gilliland held record title to this property. In 1976, the parties began living on this property. Appellee purchased an additional two and one-half acres of adjoining property in 1979. Mr. Gilliland owned the same interest in the subject property at the time of the Master's hearing. In addition to his original contribution on the purchase price, Mr. Gilliland paid one-half of the real estate taxes. With respect to the jointly owned property and the two and one-half acres owned solely by appellee, the Master found appellee's interest in the property to be a non-marital asset. The Master found the appreciation in the value of appellee's interest in the subject property, from the date of the parties' marriage to their final separation, to be a marital asset.[1]

¶ 4 In addition, the Master found an award of alimony to appellee necessary within the meaning of the Divorce Code. The Master recommended that appellant pay alimony to appellee in the amount of $300.00 per month for a period of two years. The Master set forth an extensive list of the factors considered and reasons for recommending the award of alimony.

¶ 5 First, we address appellant's argument regarding the designation of the 180 acres of property owned by appellee and Mr. Gilliland as non-marital property.[2] "When reviewing an order of equitable distribution, our standard of review is limited, and we will not disturb the trial court's decision absent an abuse of discretion or error of law which is demonstrated by clear and convincing evidence." *Wellner v. Wellner*, 699 A.2d 1278, 1283 (Pa.Super.1997) (citations omitted). "The determination of whether an asset is part of the marital estate is a matter within the sound discretion of the trial court." *Tagnani v. Tagnani*, 439 Pa.Super. 596, 654 A.2d 1136, 1138 (1995) (citations omitted). Specifically, appellant argues that appellee gifted his share of the 180 acres to both appellant and appellee as a tenancy by the entireties. We find this argument unpersuasive.

---

1. The subject property was appraised as having a fair market value of $220,000 in 1986 and appreciated in value so that the same property had a fair market value of $285,000 in 1995.

2. Appellant makes no specific claim for the two and one-half acres owned solely by appellee.

¶ 6 A tenancy by the entireties exists when real or personal property is held jointly by a husband and wife, "with its essential characteristic being that each spouse is seised of the whole or the entirety and not a divisible part thereof." *Clingerman v. Sadowski*, 513 Pa. 179, 183, 519 A.2d 378, 380 (1986). "A tenancy by the entireties is also characterized by the right of survivorship; upon the death of one spouse the survivor becomes the sole owner of the entireties property." *Id.*, 519 A.2d at 381. Where property is placed in the names of both the husband and wife, the creation of a tenancy by the entireties is presumed. *Raiken v. Mellon*, 399 Pa.Super. 192, 582 A.2d 11, 14 (1990).

¶ 7 Appellant states that the alleged tenancy by the entireties was created in 1986 in relation to appellant's role as a co-signer for a loan. Appellant testified that the bank president and appellee told appellant that her name was on the mortgage of the subject property as a result of her role as a co-signer. (N.T. 12/22/97, at 64–65; 130–131). Appellee testified that he also believed that appellant's name was placed on the deed as a result of her role as a co-signer. (N.T. 12/22/97, at 225–227). However, appellee testified that he never intended to place appellant's name on the deed. (N.T. 12/22/97, at 226–227). In addition, no documentary evidence or third party testimony was offered to support appellant's claim. For reasons unknown, appellant's name was never placed upon the deed.

¶ 8 We agree with the Master's findings that the parties' testimony concerning the placement of appellee's name upon the deed is ambiguous and inconclusive. In addition, we find appellant's reliance upon *Hengst v. Hengst*, 491 Pa. 120, 420 A.2d 370 (1980), and *Brown v. Brown*, 352 Pa.Super. 267, 507 A.2d 1223 (1986), to be misplaced. Accordingly, the trial court did not err in adopting the Master's Report.

¶ 9 The *Hengst* case resolved the issue of whether, in the absence of a writing executed by the parties, a savings plan titled in the husband's name but treated during the marriage by both husband and wife as property owned by the entireties, constitutes jointly held property. The husband elected to participate in the savings plan during the marriage. The husband testified that from the time he began participating in the savings plan until the divorce, he considered the assets in the plan to be jointly owned by himself and his wife. *Hengst*, 420 A.2d at 371. In addition, the wife testified that her contributions to the household expenses allowed the husband to continue his participation in the savings plan. *Id.*, 420 A.2d at 370.

¶ 10 The Pennsylvania Supreme Court found a donative intent on the part of the husband since he testified that he intended the savings plan to be jointly owned. *Hengst*, 420 A.2d at 371. In addition, our Supreme Court found that under the facts of *Hengst*, *supra*, "the lack of a delivery of a writing cannot defeat the gift." *Id.*, 420 A.2d at 371. Our Supreme Court continued its analysis by recognizing that "[a]ctual delivery is necessary to avoid adversely affecting third parties and to protect the donor from fraud." *Id.*, 420 A.2d at 371. "[W]here the donor, under oath in open court, has admitted that the res was, in fact, deemed between donor and donee to be their jointly held property and so used, and no third party is even remotely affected, the very reason for the requirement of actual delivery is absent." *Id.*

¶ 11 Initially, we note that *Hengst*, *supra*, and the present case dealt with different types of property that receive different treatment under the Divorce Code. Not only did the husband in *Hengst*, *supra*, elect to participate in his company's savings plan while he was married, but the savings plan was akin to retirement or pension benefits. *See Brown v. Brown*, 447 Pa.Super. 424, 669 A.2d 969, 972 (1995), *affirmed by* 547 Pa. 360, 690 A.2d 700 (1997) ("[r]etirement pension benefits, vested and non-vested, are marital property subject to equitable distribution; [a]s a

general rule, only that portion of the pension attributable to the period commencing with the marriage and ending on the date of separation is marital property"). The present case involves real property purchased prior to the parties' marriage. *See* 23 Pa.C.S.A. § 3501(a)(1)("property acquired prior to marriage or property acquired in exchange for property acquired prior to the marriage" is not marital property). Further unlike *Hengst, supra,* the present case involves the property interests of a third party.

¶ 12 Not only do the factual distinctions demonstrate appellant's misplaced reliance on *Hengst, supra,* but the legal reasoning contained in *Hengst* does not support appellant's argument. In *Hengst, supra,* our Supreme Court recognized the gift, in the absence of a writing, because no third party would be "remotely" affected. *Hengst,* 420 A.2d at 371. Herein, both appellee and Mr. Gilliland jointly owned the 180 acres well before the parties were married. The gift that appellant alleged to have received from appellee would have directly affected Mr. Gilliland by providing appellant with a right of survivorship to appellee's interest in the subject property. Thus, the principles set forth by our Supreme Court in *Hengst, supra,* do not support appellant's argument.

¶ 13 The case of *Brown v. Brown,* 352 Pa.Super. 267, 507 A.2d 1223 (1986), resolved the issue of whether property held individually by one spouse prior to marriage and transferred during marriage to a tenancy by the entireties becomes marital property for purposes of equitable distribution. The wife transferred title of the property at issue to herself and her husband for valuable consideration, by a deed that was duly recorded. *Brown,* 507 A.2d at 1224. We found that a valid gift to the marital estate occurred. However, our holding that "[t]he presumption of an estate by the entireties, and that a valid gift ensued therefrom, may be overcome by clear and convincing evidence to the contrary" was later overruled by *Sutliff v.* *Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988). *Id.,* 507 A.2d at 1225; *Mackalica v. Mackalica,* 716 A.2d 653, 655 (Pa.Super.1998). Our Supreme Court held that it is sufficient to rebut the presumption of marital property by a preponderance of the evidence. *Mackalica,* 716 A.2d at 655–656.

¶ 14 In addition to having been overruled, *Brown v. Brown,* 352 Pa.Super. 267, 507 A.2d 1223 (1986), is factually dissimilar to the present case. The present case did not involve an obvious transaction in which title to property was properly transferred pursuant to a deed that was duly recorded. To the contrary, no documentary evidence exists that supports the occurrence of a valid gift. Moreover, the testimony of the parties was ambiguous and inconclusive. Appellant's belief that a gift occurred was not based upon documentary evidence, but rather an assumption that her role as a cosigner for a loan placed her name on appellee's deed. Thus, we fail to recognize how *Brown, supra,* specifically furthers appellant's case.

¶ 15 We now address appellant's argument that alimony was improperly calculated and awarded. Before addressing appellant's argument, we set forth our scope of review,

> Our scope of review for purposes of evaluating a trial court's award of alimony is limited to a determination of whether the trial court abused its discretion. An abuse of discretion exists when the judgment of the trial court is manifestly unreasonable or is the result of prejudice, bias or ill-will. While it is not an appellate court's duty to create the record or assess credibility, we must nevertheless examine the existing record to ascertain whether sufficient facts are present to support the trial court's order. If sufficient evidence exists in the record to substantiate the trial court's action, and the trial court has properly applied accurate case law to the relevant facts, then we must affirm. Also, the purpose of alimony is not to reward one party and punish another, but rather to

ensure that the reasonable needs of the person who is unable to support himself/herself through appropriate employment are met.

*Jayne v. Jayne,* 443 Pa.Super. 664, 663 A.2d 169, 174 (1995) (citations omitted).

¶ 16 Appellant alleges that the trial court abused its discretion by ordering alimony in accordance with the Master's Report. Appellant argues that the Master erred by considering appellee's permanent and debilitating injury that occurred nearly two years after the parties' separation. Appellant's allegation of error focuses primarily upon the fact that appellee's injury occurred after the parties' separation. We do not find error in the Master's consideration since appellee's injury rendered him incapable of continuing to work as a carpenter and relegated him to minimum wage employment. As stated above, the purpose of alimony is to ensure that the reasonable needs of the person who is unable to support himself through appropriate employment are met. *See Jayne, supra.* In addition, we do not find error in the fact that the Master considered an injury that occurred after the parties' separation. The Master's consideration of this occurrence reflects the section of the Divorce Code that allows for the modification of an alimony order based on changed circumstances of the parties. *See* 23 Pa. C.S.A. § 3701(e)("[a]n order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made").

¶ 17 In addition, appellant alleges that numerous additional factors weighed significantly against awarding alimony. These factors included the following: (1) appellee received a sizable inheritance; (2) appellee owned significant non-marital assets; (3) appellant had custody of the two teenage children; and (4) appellant made significant contributions as a housewife. However, after a thorough review of the record as well as the Master's detailed findings and considerations, we find that sufficient facts existed to support the trial court's order. Moreover, our analysis indicates that the trial court did not abuse its discretion by ordering alimony in accordance with the Master's Report.

¶ 18 For the foregoing reasons, we affirm the order of the lower court.

¶ 19 Order affirmed.