FRED HAMPTON, Appellant, v. ANNIE MAE
MANUEL et al., Appellees.—405 S.W.(2d) 47.

Western Section. January 29, 1965.

Certiorari Denied by Supreme Court July 6, 1965.

96

Melvin Fleischer, Memphis, for appellant.

Clyde P. West, Memphis, for appellees, Annie Mae Manuel and others.

Erich W. James, Memphis, guardian ad litem for minor heirs and unknown heirs of Flora Hampton, decd., for appellees.

CARNEY, J. Fred Hampton has appealed from a judgment of the Circuit Court of Shelby County, Tennessee, adjudging him to be the owner of only a one-half interest in and to a house and lot which was condemned by the State of Tennessee for highway purposes. The state deposited with the Clerk of the Circuit Court the sum of $9,700.00 representing the full value of the house and lot which was condemned and the appellant, Fred Hampton, was permitted to and did withdraw the sum of $4,850.00 representing a one-half interest in said house and lot which admittedly he was the owner of.

The Trial Judge held that the other one-half interest in said house and lot was owned by the defendants-appellees who are the heirs of a sister of Flora Hampton who was married to Fred Hampton in 1918.

The house and lot located at 132 West Illinois Street in Memphis, Tennessee, was deeded to Fred Hampton and wife Flora, as tenants by the entirety in 1926. They occupied the property as man and wife until November 9, 1934, when Flora Hampton deserted Fred Hampton, left Memphis and moved to the State of Mississippi.

The parties had no children. Fred Hampton continued to live in the home until the condemnation suit was filed in 1963.

On August 19, 1944, he filed suit in the Circuit Court of Shelby County seeking a divorce from Flora Hampton in which he averred that she had deserted him in 1934. No mention was made of the house and lot in the decree. The Circuit Judge granted Fred Hampton a divorce on the grounds of two years wilful desertion. The divorce decree was entered November 6, 1944. In 1945, Fred Hampton married his present wife, Georgia Hampton. Flora Hampton died in 1952 in the State of Mississippi without children.

On April 9, 1963, the State of Tennessee through its Department of Highways and Public Works and acting by and through the City of Memphis filed a petition in the Circuit Court of Shelby County seeking a condemnation of the house and lot occupied by Fred Hampton and wife, Georgia Hampton. Fred Hampton and his wife, Georgia, were made parties defendant as well as all of the appellees who were named defendants as the heirs at law of Flora Hampton, deceased. By their deed dated May 2, 1963, the defendants, Ollie Mae Jones, Iola Allen, Flora Marry and Annie Mae Manuel, executed a quit-claim to Fred Hampton to the house and lot described in the condemnation suit and also assigned to him all of their interest in the proceeds to be awarded for condemnation of such property and the suit then pending in the Circuit Court of Shelby County, Tennessee. Their deed was executed without consideration. The Trial Judge set the deed aside.

On October 7, 1963, Fred Hampton and wife, Georgia Hampton, filed a petition in the condemnation suit asking

the court to pay over to him the remaining $4,850.00 representing the other one-half interest in the real estate. He averred that he had become the owner in fee simple of the property because he had been in the exclusive and uninterrupted possession of the real estate continuously from the date of desertion in November, 1934, by Flora Hampton to April 9, 1963, the date of filing the condemnation petition by the State of Tennessee and that during this time he had improved the property, he had collected all the rents, he had paid all the taxes, and had claimed the property as his own and that during all this time neither Flora Hampton nor any of the present appellees ever made any claim upon him or questioned his title to said property in any manner.

Also he stated in his petition that four of the defendants named above had executed a written instrument assigning their interest in the money representing the real estate to him. The present defendants-appellees were all made parties defendant to the petition and process by personal service and publication was had against them.

The defendants, Ollie Mae Jones, Iola Allen, Flora Belle Marry and Annie Mae Manuel, had until November 7, 1963, in which to answer and they failed to answer the petition of Fred Hampton and on November 8, 1963, a pro confesso was entered against them. On November 19, 1963, they filed a sworn petition asking the court to set aside the pro confesso and allow them to answer averring that they did not realize before Friday, November 15, 1963, that they should have filed an answer to his petition. The Trial Judge set aside the pro confesso and allowed the petitioners to file answer and cross petition. Fred Hampton excepted to the action of the court in not

requiring a payment of costs as condition for setting aside the pro confesso pursuant to T.C.A. Section 21-506.

On December 13, 1963, Ollie Mae Jones, Iola Allen, Flora Belle Marry, and Annie Mae Manuel filed an answer and a cross petition averring that Fred Hampton never did perfect title to Flora Hampton's one-half interest in said property and also averring that the quitclaim and gift of their interest in the award was obtained by Fred Hampton by fraud; that they trusted him as their uncle; that he did not mention anything to them about their having any interest in the real estate and that they did not know that they had any interest in the real estate or that there was any money for them.

The Trial Judge granted the cross petition, set aside the deed of gift to their interest in the property and awarded the appellees all of the interest formerly owned by Flora Hampton in and to said house and lot. Fred Hampton has appealed and assigned error.

Assignment of error No. I insists that it was mandatory for His Honor the Trial Judge to assess the costs against the defendants upon granting their motion to set aside the pro confesso. Our Supreme Court has held that the provision of T.C.A. Section 21-506 relating to payments of costs was not mandatory but was within the discretion of the Chancellor. Ezell v. Hake (1947), 184 Tenn. 319, 198 S.W.2d 809. In this case the Trial Judge, sitting without a jury, was acting as a Chancellor and we see no merit in this assignment. It is respectfully overruled.

By assignment of error No. III the appellant, Fred Hampton, insists that the court was in error in failing to hold that he was the owner of the entire fee in the property by virtue of the doctrine of presumption of title

arising out of his continuous, exclusive, uninterrupted possession beginning with the abandonment of him and the property by Flora Hampton in 1934 and continuing more than twenty years and up until April, 1963.

By assignment of error No. IV the appellant, Fred Hampton, insists that his divorce from Flora Hampton in 1944 amounted to an ouster of her as a tenant in common in said property and that he had continued in the exclusive uninterrupted possession of said property for a fraction less than the full twenty year period and that he was entitled to the fee simple title to said property.

In support of assignment of error No. III relating to presumption of title or the presumption of lost grant accompanied by exclusive and uninterrupted possession for more than twenty years, solicitor for appellant in his excellent brief very forcefully argues that under the doctrine of presumption of title, an ouster need not be proved but is to be presumed by the trier of fact, if not rebutted; that the distinction between adverse possession under the statutes of limitations and the doctrine of presumption of title is that under the former an actual ouster or its equivalent must be proven whereas under the latter an ouster will be presumed. He cites and relies upon Marr's Heirs v. Gilliam, 41 Tenn. 488, (1860); Burns v. Headerick, 85 Tenn. 102, 2 S.W. 259; Drewery v. Nelms, 132 Tenn. 254, 177 S.W. 946 (1915); Valley v. Lambuth, (Western Section, 1926), 1 Tenn.App. 547; Taylor v. Blackwell, (1918), 141 Tenn. 184, 207 S.W. 738.

Finally solicitor relies most strongly upon the following quotation from Eckhardt v. Eckhardt, 43 Tenn.App. 1, 305 S.W.2d 346, (Midde Section, 1957):

"So, while she failed to make out her title to this lot by adverse possession under our statute of limitations,

we think she did make out her title by prescription or 20 years exclusive and uninterrupted possession. Under the above authorities, she could tack her husband's possessions to her own, and the two of them have exclusive and uninterrupted adverse possession for more than 20 years, claiming the entire interest, taking the whole rents and profits, without accounting to the cotenants. This was sufficient to warrant a finding of title in her under a grant that had been lost.'' Eckhardt v. Eckhardt, supra, 43 Tenn. App. at 6, 305 S.W.2d 346 at 348.

Except for the cases of Moore v. Cole, 1956, 200 Tenn. 43, 289 S.W.2d 695, and Memphis Housing Authority v. Mahoney, 50 Tenn.App. 117, 359 S.W.2d 852, February 21, 1962, this member of the court would be disposed to apply the rule of Eckhardt v. Eckhardt to this case.

In Memphis Housing Authority v. Mahoney, supra, the litigation arose out of a condemnation suit as in the case at bar. Caroline S. Henry had owned a house and lot in Memphis by deed dated September 28, 1881. The property was sold for non-payment of taxes and on March 30, 1905, a tax deed was executed to Phillip Miller, Husband of Caroline Henry Miller. They left three children, John Miller, Frank Miller and Ida Miller. Apparently there was no will and Ida Miller occupied the property until her death on June 26, 1937.

Phillip William Mahoney, one of the children of Ida Miller, took possession of the house and lot on the death of Ida Miller Mahoney, collected the rents, paid taxes and made repairs and made no accounting to any of the other heirs of Caroline S. Miller, Phillip Miller, or his mother, Ida Miller Mahoney. Phillip William Mahoney

died on January 7, 1959, more than 20 years after the death of his mother. He devised the property to his widow, the petitioner, Mrs. Lola Mae Mahoney, who held the property as devisee until the condemnation suit was filed by the Memphis Housing Authority. Mrs. Lola Mae Mahoney contended that she and her husband, Phillip Mahoney, had perfected full title to the house and lot by over twenty years possession. There was no proof that any of the other heirs of Caroline Henry or Ida Miller exercised any control over the house and lot after the death of Ida Miller in 1937 or that Mr. or Mrs. Mahoney ever recognized any of them as co-tenants. The Trial Judge held adversely to Mrs. Mahoney. She appealed and this court affirmed the lower court.

Judge Bejach of this court reviewed the many Tennessee cases relating to property owned by tenants in common. It was the opinion of this court that the case of Moore v. Cole, 1956, 200 Tenn. 43, 289 S.W.2d 695, opinion by Mr. Justice Burnett, was controlling. Judge Bejach quoted at length from the opinion of Justice Burnett including the following quotation from Drewery v. Nelms, 132 Tenn. 254, 177 S.W. 946:

" 'The authorities generally in this State support this statement. Certainly to constitute an ouster of one tenant in common the evidence that there has been an ouster must be stronger as between these tenants in common than as between mere strangers. When one attempts to set up an ouster as between tenants in common the evidence should be viewed by the court most strongly against that person who attempts to set up an ouster and in favor of the tenant in common who makes no such attempt. Drewery v. Nelms, 132 Tenn. 254, 177 S.W. [946] 956.' Moore v. Cole, 200 Tenn. 50, 51-52, 289 S.W.2d 689-699 [695].

"In the light of the above quotation, which is the last word of the Supreme Court on the subject, and in view of the fact that, after a careful reading of the record, we cannot say that the evidence in this cause preponderates against the ruling of the trial judge, we hold that the appellant has not made out her claim of exclusive ownership of the property here involved, acquired by prescription."

In the case of Moore v. Cole the litigation was over a house and lot in Memphis, Tennessee, between the ultimate grantee of one R. D. Casey and the heirs of his first wife, Elizabeth Casey. The house and lot in 1914 was conveyed to R. D. Casey and wife, Elizabeth Casey, as equal tenants in common. In 1927 Elizabeth Casey died without children. In 1928, R. D. Casey married Eva Casey and they occupied the house and lot over twenty years and until 1950 when Robert Casey died. He devised the property to his second wife, Eva Casey, who in turn sold it to the defendant, Lizzie B. Moore.

On March 7, 1941, Robert Casey and wife, Eva, had executed a warranty deed to one Lula Williamson who immediately executed a warranty deed to the same property back to Robert Casey and wife, Eva Casey, as tenants by the entirety. Lula Williamson never took possession of the property.

The heirs of Elizabeth Casey, namely Edna H. Cole and others, brought suit against Lizzie B. Moore who contended that R. D. Casey and wife, Eva B. Casey, obtained title to Elizabeth Casey's interest in the property by adverse possession. The Chancellor held in favor of the heirs of Elizabeth Casey. On appeal to this court we held that R. D. Casey and wife, Eva B. Casey, had established title to the property by seven years adverse possession

under T.C.A. Section 28-201 claiming title under the deed from Lula Williamson to them and that such deed was effective as an ouster of the heirs of Elizabeth Casey. The Tennessee Supreme Court reversed this court, sustained the action of the Chancellor and held that there had been no ouster of the heirs of Elizabeth Casey after her death in 1927. No mention was made by Mr. Justice Burnett of the doctrine of presumption of lost grant.

Eckhardt v. Eckhardt, 43 Tenn.App. 1, 305 S.W.2d 346 was decided by the Middle Section of this Court in 1957 shortly after our Tennessee Supreme Court announced Moore v. Cole but the Eckhardt case did not mention Moore v. Cole.

Judge Bejach's opinion differentiated the Eckhardt case from the Mahoney case by noting that in the Eckhardt case there had been a judgment in the lower court sustaining the contention of the appellee of title by prescription under the theory of a presumption of lost grant and that hence the case went to the Court of Appeals accompanied by a presumption of correctness whereas in the Mahoney case there had been a decision by the lower court against the contention of the appellant that he held title under the doctrine of prescription and came to this court accompanied by a presumption of correctness of the judgment.

█ It is singular to note that the same Circuit Judge who tried the case of Memphis Housing Authority v. Mahoney also tried the case at bar. In this case also he rendered judgment contrary to the contention of the appellant that he had established title by prescription and hence the case comes to this court accompanied by a presumption of correctness of such decision as in Memphis Housing Authority v. Mahoney.

Our sympathies are with the appellant, Fred Hampton, a 70-year-old colored man. He has been in the exclusive uninterrupted possession of his home continuously for almost thirty years after his wife abandoned him and the home exercising all of the indicia of ownership, yet we feel that the decisions of Memphis Housing Authority v. Mahoney and Moore v. Cole are controlling.

■ From 1934 until 1944 Fred Hampton was in the possession of the house and lot as tenant by the entirety. When Fred Hampton obtained a divorce in 1944 from his former wife, Flora Hampton, they became owners of the property as equal tenants in common. Hopson v. Fowlkes, 92 Tenn. 697, 23 S.W. 55, 23 L.R.A. 805; McClung v. McClung, 29 Tenn.App. 580, 198 S.W.2d 820.

From the date of the divorce in November, 1944, to the date of Flora's death in 1952 in the State of Mississippi, there was no communication between them and there is no proof in the record that Fred Hampton gave her any notice that he was claiming the entire fee simple title to the property or gave any notice to her which would be recognizable as an ouster of a tenant in common.

After Flora's death in 1952 Fred Hampton gave no notice to the heirs of Flora Hampton, namely, the present appellees that he was claiming the full interest in the property as against them. Of course, these present appellees did not even know that they had an interest in the property and those of them who knew Fred Hampton apparently assumed that he owned the property. It was only after the condemnation suit was filed by the State of Tennessee and after they had been advised of their rights by a lawyer that they learned that they had a legal interest in the property and made claim therefor.

 Appellant cites and relies upon the case of Ferring v. Fleischman, Court of Chancery Appeals, Dec. 5, 1896, 39 S.W. 19, as holding that the divorce of Fred Hampton from Flora Hampton in 1944 and his subsequent possession of the house and lot constituted an ouster. In the Fleischman case the Court of Chancery Appeals did hold that the possession of the former husband of the property belonging to the wife after the divorce was adverse to the wife but it is not controlling of the case at bar because Fred Hampton held title to the house and lot after the divorce as an equal tenant in common with his former wife, Flora Hampton. We are cited to no other authority holding that the divorce of Fred Hampton from Flora Hampton in November, 1944, in and of itself constituted an ouster of his tenant in common. The case of Hopson v. Fowlkes, 92 Tenn. 697, 23 S.W. 55 cited by appellant merely states the general law that a tenancy by the entirety is converted into a tenancy in common upon the divorce of the parties. It does not hold that the divorce constitutes an ouster of the wife's interest in the property. We must overrule assignments of error III and IV.

 Assignment of error No. II complains of the action of the Trial Judge in excluding the testimony of Fred Hampton that on the day Flora Hampton left him in 1934 he told her that it was all right if she wanted to move, that he could not keep her from leaving but he could keep her from coming back and that she never did try to come back at all. The Trial Judge sustained an objection of the appellees to the admissibility of this evidence on the grounds that it was not contained in the pleadings. We incline to the view that this statement probably was admissible but find it unnecessary to decide as to the admissibility because the question has now

become moot. The error of the lower court at most would be harmless error. T.C.A. Section 27-117.

Assignments of error V and VI complain of the action of the Trial Judge in setting aside the deed of gift of the interest of Ollie Mae Jones, Iola Jones Allen, Flora Belle Marry and Annie Mae Manuel in and to the property and to the cash deposited in the hands of the Clerk of the Court by the State of Tennessee. The so-called gift or paper which these appellees signed was prepared for Fred Hampton by his attorney after he had learned that the State of Tennessee contended that these appellees and others owned an interest in Fred Hampton's home. Appellees stated that he told them that he needed their signatures just in order to get him cleared up so he could move out of his house. Fred denied that he made this statement. His testimony is somewhat vague but finally he told the court that he merely wanted the paper signed so that the could ''clarify myself to the men who were going to take over'' after which the court stated, ''You didn't give them anything for it and you didn't think they were giving you anything? That's right, isn't it?'' Fred answered, ''Yes, sir.''

Appellees did not have the benefit of counsel, they trusted their uncle, Fred Hampton, and apparently the Trial Judge found that there was no real meeting of the minds and that they had been overreached. The evidence does not preponderate against his finding and the assignments of error are overruled.

The decree of the lower court will be affirmed and the costs of this appeal taxed against the appellant, Fred Hampton.

Avery, P.J. (W.S.), and Bejach, J., concur.